MARCELLA VITTETOE, plaintiff-appellee, v. IOWA SOUTHERN UTILITIES COMPANY, defendant-appellant.

SAMUEL A. WILDER, original plaintiff-appellee, et al., substituted plaintiffs-appellees, v. IOWA SOUTHERN UTILITIES COMPANY, defendant-appellant.

No. 51059.

(Reported in 123 N.W.2d 878)

OCTOBER 15, 1963.

Livingston, Day & Bates, of Washington, and Robert Valentine and C. R. S. Anderson, of Centerville, for appellant.

Baldrige & Baldrige, of Washington, for appellee Marcella Vittetoe.

Stewart & Shearer, of Washington, for Samuel A. Wilder, original plaintiff-appellee and substituted plaintiffs-appellees.

GARFIELD, C. J.—Plaintiffs, Mrs. Vittetoe and Samuel A. Wilder, own adjoining farms between one and two miles east of Washington, Iowa. (We disregard the fact Wilder is now dead and personal representatives are substituted for him.) Defendant sought to condemn a strip of land 100 feet wide diagonally across the farm for right-of-way for a 69,000-volt electric transmission line. After obtaining a franchise from the state com-

merce commission (herein called "commission") for such purpose defendant filed with the sheriff of Washington County its petition for condemnation of these and other lands. From the awards of the commissioners or "sheriff's jury" each plaintiff appealed to the district court.

The first division of the petition filed by each plaintiff in the appeal alleges defendant's petition for condemnation filed with the sheriff was invalid because no valid authority to condemn had been issued; that at the hearing before the (commerce) commission on defendant's application for a franchise the commission excluded from its consideration the question whether the condemnation was necessary; without a determination of such necessity defendant cannot exercise the power of eminent domain; and so the taking herein amounts to the taking of private property for private purposes and any law granting such right is unconstitutional. Defendant's answer denies these allegations.

Pursuant to stipulation these divisions were consolidated for trial to the court. The facts were stipulated. They consist largely of a partial record of the proceedings before the (commerce) commission upon defendant's application for a franchise. The trial court upheld plaintiffs' contention the franchise and defendant's petition for condemnation were invalid upon the grounds alleged by plaintiffs and dismissed the condemnation proceeding. Defendant appeals to us.

I.   Section 489.1, Code, 1958 (all Code references are to the Code of 1958 unless otherwise noted), prohibits the erection of an electric transmission line across any public highway or grounds outside cities and towns without first procuring "a franchise granting authority so to do as in this chapter provided."

Section 489.2 provides for the filing of a petition asking for a franchise to erect a transmission line "necessary for conducting electric current for light, heat, or power * * * and to acquire necessary interests in real estate for such purposes."

Section 489.4 requires the board or commission with which the petition is filed to fix a date for hearing thereon and cause a notice thereof to be published.

Section 489.5 gives anyone whose rights or interests may be

affected "the right to file written objections to the proposed improvement or to the granting of such franchise; * * *. The board or commission * * * shall consider said petition and any objections filed thereto, and may hear such testimony as may aid it in determining the propriety of granting such franchise."

Section 489.14 is perhaps the most important statute applicable to the present appeal. It provides in part that anyone "having secured a franchise as provided in this chapter, shall thereupon be vested with the right of eminent domain *to such extent as may be necessary* and as prescribed and approved by the board or commission, not exceeding one hundred feet in width for right of way * * *." (Emphasis added.)

Perhaps we should also set out this from section 489.17: "Said transmission line shall be constructed near and parallel to the right of way of the railways of the state or along the division lines of the lands, according to the government survey thereof, wherever the same is practicable and reasonable, and so as not to interfere with the use by the public of the highways or streams of the state, nor unnecessarily interfere with the use of any lands by the occupant thereof."

In connection with this last provision we may observe a railway forms the north boundary of the farm of each plaintiff and goes in the general direction of the proposed transmission line.

II. Plaintiffs filed objections with the commission to defendant's application for the franchise and appeared in person and with counsel at the hearing thereon. Plaintiffs then attempted to show by cross-examination of defendant's witnesses and their own evidence it was not necessary for defendant to take plaintiffs' lands for right-of-way for its transmission line. However, the commission ruled "The matter of convenience and necessity doesn't enter into our hearing. Strictly safety and engineering. Convenience and necessity do not enter into these hearings." The commission's "Decision and Order" granting the franchise recites: "Under chapter 489, Code 1958, the applicant is not required to show convenience and necessity."

It is true an exhibit entitled "Approval by Iowa State Commerce Commission to exercise the right of eminent domain," dated 18 days after issuance of the decision and order granting

the franchise and the franchise itself, contains the statement in the printed form, "this Commission * * * does hereby certify that in the opinion of the * * * Commission the property hereinafter described is necessary for right-of-way easement purposes for the use of said company, to-wit:".

Notwithstanding the statement just quoted, it is clear the commission failed and refused to consider the question whether it was necessary for defendant to condemn the strip in question for right-of-way purposes and plaintiffs were not permitted to resist defendant's application for franchise on the ground the taking was not necessary. We think the principal question upon this appeal is whether this renders invalid the franchise and defendant's petition for condemnation of plaintiffs' lands. We hold it does.

III. It is true, as defendant argues, the initial determination of what is a public use is ordinarily for the legislature and courts will not interfere with its determination that a use is public unless it is clear, plain and palpable it is private in character. Such legislation has the same presumption in its favor as exists where constitutionality of a statute is challenged. Abolt v. City of Fort Madison, 252 Iowa 626, 634, 108 N.W.2d 263, 268, and citations.

Much of defendant's argument is devoted to the proposition that the transmission of electric current for distribution to the public is a public use for which the power of eminent domain may be exercised. This is not open to doubt. Carroll v. City of Cedar Falls, 221 Iowa 277, 285, 286, 261 N.W. 652; Northern States Power Co. v. Oslund, 236 Minn. 135, 51 N.W.2d 808, 809, 52 N.W.2d 717; Annotations, 44 A. L. R. 735, 741, 742, 58 A. L. R. 787; 18 Am. Jur., Eminent Domain, sections 66, 67, pages 693–697; 29 C. J. S., Eminent Domain, section 58, pages 845–847.

The disagreement between the parties here is not over the question whether distribution of electricity to the public is a public use. Their disagreement relates to whether the particular property sought to be condemned is necessary for the proposed use. "To authorize the condemnation of any particular land by a grantee of the power of eminent domain, a necessity must exist

for the taking thereof for the proposed uses and purposes; * * *." 29 C. J. S., Eminent Domain, section 90, page 884. See also Porter v. Iowa State Highway Comm., 241 Iowa 1208, 1216, 44 N.W.2d 682, 686, and citations.

An absolute necessity for taking the particular land need not exist. A, reasonable necessity is sufficient. Minear v. Plowman, 197 Iowa 1188, 1191, 197 N.W. 67; Northern States Power Co. v. Oslund, supra, 236 Minn. 135, 51 N.W.2d 808, 809, 52 N.W.2d 717; Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 535, 65 A. L. R. 488, 501, 502; Lewis on Eminent Domain, Third Ed., section 601, page 1062; 29 C. J. S., Eminent Domain, section 90, page 886.

It is agreed that, unlike other statutes granting the power of eminent domain, chapter 489 at the time in question here—it is different now—contained no definite requirement that the commission make a specific finding and determination of public convenience and necessity. Defendant (appellant) argues, however, that a finding by the commission of public convenience and necessity for the particular condemnation "is either implied within the legislation or is included as part of the determination of propriety when a franchise is granted." Reliance is upon the requirement of section 489.5, supra, that the commission "shall consider said petition and any objections filed thereto, and may hear such testimony as may aid it in determining the propriety of granting such franchise." (Here the "petition" was designated "Application.")

For purposes of this appeal and without passing on its soundness, we may accept defendant-appellant's argument that chapter 489, impliedly or because a finding of "propriety" is called for, requires the commission to hear and determine whether it was necessary to condemn plaintiffs' lands. The fact remains, however, the commission refused to hear evidence on the question of necessity and held it was not required to make a finding thereof. If defendant's argument as to the effect of chapter 489 is accepted, we think a franchise issued under these circumstances insufficient to support the condemnation. A valid franchise is clearly a prerequisite to the exercise of the right of eminent domain. Section 489.14, supra.

Lewis on Eminent Domain, Third Ed., thus summarizes the law we believe to be applicable here:

"The constitution or statute may require the necessity of making a particular improvement or of taking property for a particular purpose to be passed upon in a particular manner or by a particular tribunal. In such cases it is imperative that the necessity shall be ascertained as required by law [section 598, pages 1057, 1058].

"Again many statutes expressly limit the taking to such and so much property as may be necessary for the purpose in question. This may be done by a general statute on the subject of eminent domain but is more frequently done in the statute conferring authority. * * * In all such cases, where the authority is to take property necessary for the purpose, the necessity of taking particular property for a particular purpose is * * * one, upon which the owner is entitled to be heard [section 599, pages 1059, 1060].

"If we consider all the statutes now in force or whichever have been in force in this country, providing for the exercise of the eminent domain power, undoubtedly the great majority have not limited the taking to what is necessary for the purpose in question. But we think that the constitution impliedly forbids the taking for public use of what is not necessary for such use and, therefore, though the constitution and statute are silent on the subject of necessity, that the power to take is, in every case, limited to such and so much property as is necessary for the public use in question, and that the owner is entitled, either in the proceedings to condemn or otherwise, to be heard upon this question. 'Necessity and a public use must, in all cases, exist as a condition precedent to the legal right to enforce the remedy given to condemn, and the company (condemnor) is not the judge of the existence of the necessity, or of the character of the use; * * * [section 600, pages 1060, 1061].' "

As previously shown, our statute (section 489.14, supra) vests in such companies as defendant "the right of eminent domain to such extent as may be necessary * * *."

We purposely refrain from an extended discussion of whether the question of necessity for a particular condemnation

is a legislative or a judicial one and have omitted statements from Lewis on this point. Suffice to say that seldom does a legislature determine for itself such question of necessity. The determination is commonly delegated to such a body as our commerce commission which acts in a quasi-judicial capacity in such case. Reter v. Davenport, R. I. & N.W. Ry. Co., 243 Iowa 1112, 1122, 54 N.W.2d 863, 869, 35 A. L. R.2d 1306. See notes 11 L. R. A., N. S., 940, 22 L. R. A., N. S., 1, 82.

We find no Iowa decision directly in point. This from De Penning v. Iowa Power & Light Co., 239 Iowa 950, 956, 957, 33 N.W.2d 503, 507, 5 A. L. R.2d 716, has some application:

"Under Code section 489.14 defendant is 'vested with the right of eminent domain to such extent as may be necessary * * *.'

"The principle upon which such companies are allowed to condemn is not that they may do what they please but that they may do what is reasonably necessary to carry out the public purpose for which the land is taken. Anything beyond this is not the taking of private property for public use but for private use. [citations] * * *.

"The law does not favor the taking of property for public use beyond the necessities of the case * * *."

To like effect is this from Bennett v. City of Marion, 106 Iowa 628, 632, 76 N.W. 844, 845:

"If the amount sought to be condemned is in excess of that necessary for the improvement, the appropriation of such excess is not for the public use. It will be noticed that the precise property, or the amount thereof, is not fixed by the legislature, but authority is conferred upon the city council to take for the public use only that real estate necessary therefor. If the use be not public, or the necessity does not exist, the owner ought not to be deprived of his property, notwithstanding compensation."

See also Livonia Township School Dist. v. Wilson, 339 Mich. 454, 64 N.W.2d 563, 566.

Of course private property may not be taken for private use. Mid-America Pipeline Co. v. Iowa State Commerce Comm., 253 Iowa 1143, 1147, 114 N.W.2d 622, 624. In the cited case a paper somewhat in the nature of an opinion by the commission

contained the recital that in a hearing under chapter 490 for a permit to construct and operate a pipeline "the commission found that public convenience and necessity was not an issue in the hearing and was not heard." So at least in one other instance the commission took a position similar to the one taken here.

IV. As previously indicated, chapter 489 as it appears in the Code of 1958, as well as the Code of 1962, has now been amended "to clarify the authority" defendant says was impliedly delegated to the commerce commission, and its duty, to hear and determine "whether such lines serve the public use before authorization of franchise or eminent domain." Chapter 285, Laws of the Sixtieth General Assembly, effective July 4, 1963 (the language just quoted is from the preamble), inserts this in section 489.5: "Before granting such franchise, the board or commission shall make a finding that the proposed line or lines are necessary to serve a public use" (section 1).

This is added to section 489.14, supra, "The burden of proving the necessity for public use shall be on the person, company or corporation seeking the right of eminent domain" (section 2, chapter 285).

Section 489.14 is also amended by striking therefrom the words, supra, "may be necessary and as prescribed and approved by the board or commission" and substituting in lieu thereof, "the board or commission may approve, prescribe and find to be necessary for public use" (section 3).

This amendatory Act is not to affect the rights of any persons in any pending actions in our courts.

V. What we have said is determinative of the appeal. Other questions need not be decided. Our affirmance of the decree is not to be taken as an approval—or disapproval—of all that is said in the trial court's findings of fact and conclusions of law.—Affirmed.

All JUSTICES concur.