H. William FISCHER, Appellant,

v.

IOWA STATE COMMERCE
COMMISSION, Appellee,

and

Dairyland Power Cooperative, Appellee.

No. 84–279.

Supreme Court of Iowa.

May 22, 1985.

Rehearing Denied June 24, 1985.

Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellant.

Philip E. Stoffregen, Gen. Counsel, Patrick J. Nugent, Deputy Counsel, and Diane Munns, Asst. Gen. Counsel, Des Moines, for appellee Iowa State Commerce Com'n.

Joseph Steele, Postville, and William D. Harvey and Thomas J. Zaremba of Wheeler, Van Sickle, Anderson, Norman & Harvey, P.C., Madison, Wisconsin, for appellee Dairyland Power Co-op.

Considered by UHLENHOPP, P.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

Petitioner William H. Fischer has appealed from the denial of his petition for judicial review of the action of the Iowa State Commerce Commission (the commission) in granting a franchise to appellee Dairyland Power Cooperative (DPC) for the construction of an electrical transmission line in Clayton County, Iowa.

DPC is a generation and transmission co-operative which serves as a wholesale supplier of electrical energy to some twenty-nine distribution co-operatives in Wisconsin, Minnesota, Illinois and Iowa. One of these distribution co-operatives is the Alla-

makee-Clayton Electric Cooperative, which in turn serves customers in Northeast Iowa, including the area in question.

On July 9, 1981, DPC filed a petition for franchise pursuant to Iowa Code section 478.2, seeking permission to construct a 72,000 volt transmission line, 4.2 miles in length, between existing lines and a proposed substation in Clayton County. Pursuant to Iowa Code section 478.6, DPC also sought to obtain the power of eminent domain in order to obtain easements across the land of those property owners along the route of the proposed transmission line who did not voluntarily grant it such easements. Petitioner is one of the affected property owners.

More than two years before filing its petition, DPC gave notice of and held an informational public hearing in Clayton County, as required by Iowa Code section 478.2. As an affected property owner, petitioner was given notice of the filing of the petition on September 23, 1981 and of his right to make objections to the petition. He was further notified at this time that a hearing would be held on the petition commencing October 27, 1981.

Petitioner did file objections to the granting of the franchise in accordance with section 478.5. A hearing before a hearing officer of the commission was held on October 27, 1981. No discovery was requested by petitioner prior to the hearing date. At the hearing, petitioner orally moved to dismiss the petition for failure to provide the information and substantiation required by Iowa Code section 478.3. Ruling on this motion was deferred by the hearing officer, pending submission of evidence, but the motion was ultimately denied.

DPC presented testimony and exhibits at the October 27 hearing concerning the public need for and the planning background of the proposed transmission line. Petitioner cross-examined DPC's witnesses and testified in his own behalf. He offered economic data which he contended demonstrated that population loss and changes in the dairy industry would produce a decreased demand for power rather than an increased demand as contended by DPC. At the conclusion of the October 27 hearing, the hearing officer, at the request of the commission staff and without objection by petitioner, provided that additional information could be submitted by DPC at a later time in the form of exhibits. Such additional exhibits were filed with the commission by DPC between November 10 and December 7, 1981. Upon their filing, petitioner objected on the ground that the full text of these documents had been omitted. He also expressed the desire to cross-examine DPC employees and other knowledgeable persons concerning the contents of these documents. In apparent response to the latter request and also upon a request of the commission staff to reopen the hearing, the hearing officer ordered on February 26, 1982 that the hearing be reopened.

The hearing officer's order provided that the purpose of the reopened hearing was to allow petitioner to cross-examine witnesses with respect to those exhibits submitted subsequent to the October hearing and to present any rebuttal evidence he might have to such exhibits. The order fixed the time of the reopened hearing for April 20, 1982 and, in addition, provided:

> On or before March 22, 1982, all parties shall file and serve prepared direct testimony, which testimony shall set out all additional facts which the parties consider necessary to a final decision in this matter. The parties shall be limited to cross-examination of such prepared direct testimony but may present additional testimony rebutting the prepared testimony of the opposing party.

DPC filed the proposed direct testimony of its witnesses prior to the reopened hearing, and petitioner filed his own proposed direct testimony. The testimony of petitioner's expert witnesses was treated as rebuttal evidence under the foregoing order, and, therefore, the prepared testimony of those witnesses was not filed.

On March 9, 1982, petitioner filed and served on DPC discovery interrogatories. These interrogatories were answered by DPC on April 5, 1982. A subsequent mo-

tion by petitioner to compel DPC to file more complete answers to these interrogatories was denied by the hearing officer on the morning of the reopened hearing. On March 25, 1982, the hearing officer permitted DPC to amend its petition so as to allege those matters specified in subsection 2 of Iowa Code section 478.3.

Following consideration of the dispute concerning the adequacy of DPC's responses to the interrogatories, the hearing was reopened and evidence presented by the parties. The hearing officer denied petitioner's renewed challenge to the sufficiency of the petition, both as initially filed and as amended. The hearing officer further found that the proposed transmission line was necessary to serve a public use and reasonably related to an overall plan of transmitting electricity in the public interest.

Petitioner appealed the hearing officer's decision to the commission which, in a separate opinion, affirmed that ruling. In dealing with the hearing officer's rulings on Fischer's motions to dismiss, the commission noted that its previous practice in considering franchise petitions was to order amendment of the petition upon proper challenge thereto rather than dismissing the proceedings.

Following the final agency action, petitioner timely sought judicial review of the commission's order pursuant to section 17A.19. DPC intervened in the proceeding. The district court upheld the commission's ruling with respect to the claimed inadequacy of DPC's petition. Petitioner also challenged on judicial review the matter of whether there was substantial evidence in the record, considered as a whole to uphold the granting of the franchise. The district court determined that there was. The district court affirmed the commission's ruling in all respects, and this appeal ensued. Other factual matters not previously detailed will be considered in connection with our discussion of the legal issues which are presented on the appeal.

## I. *Scope of Review.*

■ Our review, like that of the district court, is to correct errors of law made by the agency. In so doing, we apply the standards of section 17A.19(8) to the agency action. *Northwestern Bell Telephone Co. v. Iowa State Commerce Commission,* 359 N.W.2d 491, 495 (Iowa 1984); *Lefebure Corp. v. Iowa Department of Job Service,* 341 N.W.2d 768, 770 (Iowa 1983). In this case, relief is sought in part because of an alleged failure of the commission to require DPA to comply with the statutory conditions for granting a franchise as well as a lack of substantial evidence in the record to factually satisfy the statutory requirements. Thus, subsections (a), (d), and (e) of section 17A.19(8) are involved in our review as well as subsection (f) thereof.

## II. *Effect of DPC's Failure to Include All Statutory Allegations in the Petition Filed with the Commission.*

The first issue on appeal centers around petitioner's claim that the proceedings before the commission were invalid as a result of the DPC's failure to set forth in its petition all of the allegations required by Iowa Code section 478.3 (1981). He filed a motion to dismiss DPC's petition and amended petition on this ground. Section 478.3 provides:

1. All petitions shall set forth:

   *a.* The name of the individual, company, or corporation asking for the franchise.

   *b.* The principal office or place of business.

   *c.* The starting points, routes, and termini of the proposed lines, accompanied with a map or plat showing such details.

   *d.* A general description of the public or private lands, highways, and streams over, across, or along which any proposed line will pass.

   *e.* General specifications as to materials and manner of construction.

   *f.* The maximum voltage to be carried over each line.

*g.* Whether or not the exercise of the right of eminent domain will be used and, if so, a specific reference to the lands described in paragraph *"d"* which are sought to be subject thereto.

*h.* An allegation that the proposed construction is necessary to serve a public use.

2. Petitions for transmission lines carrying thirty-four point five kilovolts or more and extending a distance of not less than one mile across privately owned real estate shall also set forth an allegation that the proposed construction represents a reasonable relationship to an overall plan of transmitting electricity in the public interest and substantiation of such allegations, including but not limited to, a showing of the following:

*a.* The relationship of the proposed project to present and future economic development of the area.

*b.* The relationship of the proposed project to comprehensive electric utility planning.

*c.* The relationship of the proposed project to the needs of the public presently served and future projections based on population trends.

*d.* The relationship of the proposed project to the existing electric utility system and parallel existing utility routes.

*e.* The relationship of the proposed project to any other power system planned for the future.

*f.* The possible use of alternative routes and methods of supply.

*g.* The relationship of the proposed project to the present and future land use and zoning ordinances.

*h.* The inconvenience or undue injury which may result to property owners as a result of the proposed project.

The commission may waive the proof required for such allegations which are not applicable to a particular proposed project.

The petition shall contain an affidavit stating that informational meetings were held in each county which the proposed project will affect and the time and place of each meeting.

DPC's original petition filed with the commission on July 9, 1981, contained the information required by paragraphs *a*, *b*, *c*, *d*, *e*, and *f* of subsection (1) of the foregoing statute. With respect to the information called for in paragraph *g* of that subsection, the petition recited that, in regard to one of fourteen segments where easements were required to complete the project, the necessary easement had not yet been obtained.

The location of all fourteen segments was shown on a map filed with the petition, but the particular segment for which the power of eminent domain would be required was not identified. That segment was the area where the project crossed petitioner's lands. The record does reflect, however, that a letter was sent to petitioner by the commission on August 24, 1981, advising him that DPC was seeking the power of eminent domain for the portion of the project crossing his property. Although there was no allegation of public purpose in the body of the petition conforming with paragraph *h* of subsection (1), an affidavit of an officer of DPC was attached to the petition averring that the proposed substation project was necessary to provide adequate and reliable electric service to its member co-operatives and their customers.

We believe DPC's petition substantially complied with the requirements of subsection (1) of section 478.3. It did not, however, comply with the requirements of subsection (2) of that statute, although those requirements are facially applicable to the proposed project as a result of its length and proposed voltage levels. By a proposed amendment to its petition, approved by the hearing examiner subsequent to the November 10, 1981 hearing and prior to the reopened hearing of May 20, 1982, DPC set forth in conclusory fashion those matters required to be included in the petition by paragraphs *a-h*, inclusive, of subsection 2.

The petitioner contends that this amendment did not cure the deficiencies in the

original petition because it was (1) untimely, (2) unverified, and (3) overly conclusory. Those complaints which relate to DPC's failure to verify the amendment to its petition and the conclusory nature of the amended allegations are not persuasive when considered in connection with an administrative proceeding ultimately determined by contested case procedure. The statutory requirements for verification of the petition and "substantiation" of the allegations of the petition appear to be designed to assist the commission's needs in those cases which, in the absence of formal objection or the necessity of seeking power of eminent domain, see Iowa Code section 478.6 (1981), will be decided without resort to a contested case hearing.

■ With regard to petitioner's claim that the amendment to petition was untimely, it appears that no prejudice resulted to him as a result of DPC's failure to amend its petition at an earlier time. Regardless of the timing of the amendment, DPC was at all times required by law to establish to the satisfaction of the commission that the proposed project was necessary to serve a public use and represented a reasonable relationship to an overall plan of transmitting electricity in the public interest. *See* Iowa Code § 478.4. Petitioner, within the time for filing objections to the project and nearly two months prior to the initial hearing date, advised the commission in writing of his objections to the project based upon his belief that it would fill no current or accurately projected future need for electric power in the area sought to be served, had not been the subject of adequate planning, was not shown to be cost effective, and was located without adequate regard to alternative routes, alternative methods of transmission or alternative methods of power production. As a practical consequence of petitioner's objections, DPC had been placed upon its proof concerning the elements which section 478.3 requires to be contained in the petition long before the filing of the amendment.

■ We cannot agree with petitioner's contentions that the inclusion of all of the

requirements of section 478.3 in the petition is jurisdictional in cases where the issuance of a franchise and grant of necessary powers of eminent domain are determined by contested case procedure. The notice which must be afforded private party objectors in such cases is that prescribed by Iowa Code section 17A.12 (1981). That statute, provides, in part:

1. In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice in writing delivered either by personal service as in civil actions or by certified mail return receipt requested. However, an agency may provide by rule for the delivery of such notice by other means. Delivery of the notice referred to in this subsection shall constitute commencement of the contested case proceeding.

2. The notice shall include:

*a.* A statement of the time, place and nature of the hearing.

*b.* A statement of the legal authority and jurisdiction under which the hearing is to be held.

*c.* A reference to the particular sections of the statutes and rules involved.

*d.* A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.

It is more appropriate that the rights of an affected property owner or other objecting party in proceedings under chapter 478 be considered on the basis of adequate notice of the issues to be considered at the hearing rather than the detailed informational requirements of section 478.3. As previously noted, many of the requirements of that statute appear to be for the benefit of the commission in matters to be decided by other than contested case proceedings. Depending on the particular case involved, the contested case hearing may not involve all of the elements deemed significant un-

der the statute or, may involve matters not included in section 478.3.

Petitioner was given notice by certified mail delivered September 8, 1981, of the initial hearing to be held on October 27, 1981. That notice advised him of the time and place of the hearing, that a petition for an electric franchise involving a 72,000 volt line would be determined at the hearing, that a right of eminent domain across his property would be considered, the location of the desired easement across his property, that he had a right to file objections to the project with the commission,[1] that evidence could be presented at the hearing, and that he could cross-examine witnesses presented by others. In addition, the notice advised petitioner of a phone number he could call for additional information.

The only reference in the notice to the statutory authority and jurisdiction of the commission was a general reference to Iowa Code chapter 478 (1981). We are cognizant of the fact that that statute requires a reference to the particular section of the Code or administrative rules involved and that this was not contained in the commission's notice to petitioner. Because Fischer would, by his objection, yet determine at least some of the statutes or rules to be considered at the hearing, the initial notice of hearing could not be comprehensive. *Cf.* § 17A.12(1)(d) ("If the agency is unable to state the matters in detail at the time the notice is served, the notice may be limited to a statement of the issues involved."). Fischer could hardly have been prejudiced, *see* section 17A.19(1), by not having prior notice of the statutory bases for challenges *he* would later assert.

■ We cannot conclude that this slight deviation from the requirements of section 17A.12 deprived the commission of jurisdiction to make a valid franchise order affecting those persons who appear and take active part in the proceedings. *See and*

*compare Golden Grain Macaroni Co. v. Federal Trade Commission,* 472 F.2d 882, 886 (9th Cir.1972) (inadequacy of notice to those who appear and take part in administrative hearing does not vitiate proceedings in the absence of prejudice although a similar inadequacy of notice would vitiate proceedings as to persons who do not appear).

■ Ordinarily, all that need be shown to validate administrative proceedings against persons who participate in a contested case hearing is that they had a reasonable opportunity to know of the claims which affect them and to meet those claims. *Aloha Airlines, Inc. v. Civil Aeronautics Board,* 598 F.2d 250, 262 (D.C.Cir. 1979); *Swift & Co. v. United States,* 393 F.2d 247, 252 (7th Cir.1968); *Perry v. Planning Commission,* 62 Hawaii 666, 676, 619 P.2d 95, 108 (1980); *Tafaro's Investment Co. v. Division of Housing,* 261 La. 183, 186, 259 So.2d 57, 60–61 (1972); 2 K. Davis *Administrative Law* § 8.04, at 525 (1958). In the present controversy, petitioner's complaints concern the issues of whether the proposed project was sufficiently in the public interest and whether the location of the easement was properly placed. He has had a full, fair and complete opportunity to contest the DPC's contentions as to each of these matters.

We do not believe our decisions in *Race v. Iowa Electric Light & Power Co.,* 257 Iowa 701, 134 N.W.2d 335 (1965) and *Vittetoe v. Iowa Southern Utilities Co.,* 255 Iowa 805, 123 N.W.2d 878 (1963) require us to sustain petitioner's challenges to the commission proceedings based upon claimed inadequacies of the petition. Those cases were decided under statutes contained in Iowa Code chapter 489 (1958) which affected the grant of electrical franchises by the commission. The statutes in effect at that time required that a petition to the commission by one seeking a franchise for electric power include only those

---

1. With respect to persons other than those whose property will be taken by eminent domain, objections are necessary under section 478.6 in order to trigger a contested case hearing. Property owners facing condemnation are entitled to a hearing even in the absence of filing objection. This explains why the notice of the hearing given petitioner in the present case preceded the filing of his objections.

matters now contained in subsection (1) of present section 478.3 and not those additional matters required by subsection (2) of that statute.

At the time the *Race* and *Vittetoe* cases were decided, all such franchise applications to the commission were required to be determined after a hearing. Unlike the present statutes, chapter 489 (1958) did not permit agency action in some cases based upon the verified petition alone. In addition, we believe it is significant that both of these cases were decided prior to the enactment of the Iowa Administrative Procedure Act now found in Iowa Code chapter 17A.

In *Vittetoe*, the commerce commission had never made a finding of public purpose in granting the electric power franchise involved in that case. We upheld the right of a property owner whose land was taken by eminent domain for that franchise to assert the absence of public purpose as a defense to the taking of his property on an appeal from the award of damages by a condemnation commission. *Race* also involved a property owner's challenge to the public purpose of a proposed electric transmission line on an appeal from a condemnation award. We rejected that challenge and accepted as conclusive the commerce commission's determination of public purpose made at an administrative hearing in which the property owner had participated.

Any suggestion in the latter case that, if the allegations of the petition had been inadequate, the property owner who had appeared at the hearing could have collaterally attacked the commission's public use finding on appeal from the condemnation award was not necessary to the decision. Such suggestion is now expressly disapproved. We find no merit in petitioner's challenge to the commission's order based upon an insufficiency in the petition filed by DPC.

III. *Delay in Filing of Petition Following Public Informational Hearing.*

We next consider petitioner's contention that he was prejudiced by the fact that DPC's petition was not filed with the commission until more than two years after the informational public hearing was held.

The record reflects that an informational public hearing on the proposed project was held on June 13, 1979. Section 478.2 makes such an informational public hearing a condition precedent to the filing of a petition for a franchise. The petition for the franchise involved in the present controversy was not filed until July 9, 1981. The applicable statutes do not provide a time limit following the public hearing within which a petition for franchise must be filed. The only statutory provision regarding time for filing is that the petition may not be filed sooner than thirty days after the public hearing. *See* Iowa Code § 478.2.

Petitioner urges that any useful purpose attributable to the required informational hearing would have been completely dissipated as a result of the substantial delay in the filing of the petition. He suggests that prejudice has resulted to him as a consequence of such delay by reason of the likelihood that other potential objectors have died, moved away, or lost interest in the project. While those occurrences are certainly possible, it is also possible that new landowners opposed to the project might have moved into the affected area replacing property owners who favored the project. Whether any of these occurrences took place is, on the present record, a matter of conjecture.

█ A challenge to a proposed electric power franchise such as that lodged by petitioner is not a political issue whose chances for success increase in proportion to the number of people who disapprove of the project. There is no reason to assume in the present case that the evidence presented on the controlling issues of public purpose and suitable location for the proposed electrical facility would have differed significantly if there had been additional persons objecting to the granting of the franchise. We find no basis upon which to grant petitioner relief on this ground.

IV. *Failure to Require DPC to Make More Complete Answers to Petitioner's Interrogatories.*

█ Petitioner claims that he was unfairly prejudiced by the hearing officer's

failure to require DPC to answer more completely the interrogatories he propounded following the initial hearing and prior to the reopened hearing. Section 17A.13 provides that discovery as "applicable to civil actions" is available for purposes of administrative contested case procedure under chapter 17A. We interpret this to mean that, as in civil actions under our rules of civil procedure, challenges to responses made to discovery requests are to be resolved on an abuse of discretion standard. *See, e.g., Cave v. Fountain,* 258 Iowa 1232, 1235, 142 N.W.2d 436, 438 (1966). The administrative officials responsible for assuring the fairness of the hearing process, *see* section 17A.11, are responsible to make such determinations within their sound discretion.

The interrogatories to which petitioner's complaints relate were filed on March 9, 1982, eleven days after the hearing officer had agreed to reopen the hearing. They consisted of eighteen questions, some with several subparts. The questions for the most part called for highly technical data bearing on (a) the extent of DPC's perceived voltage drop problems in the project area, (b) the extent of DPC's perceived need for an additional power source to solve outage problems in the area, (c) alternative means available to solve these problems to the extent they exist, and (d) the cost-effectiveness of these various alternatives. DPC responded to these interrogatories with hundreds of pages of data, much of it in oversized, computer printout form.

At the hearing on petitioner's motion to compel more complete answers to the interrogatories, DPC responded on the basis that all "factual data" in its possession bearing on the subject matter of the interrogatories had been made available to petitioner. The hearing officer, after soliciting the views of the commission staff, accepted such response as adequate and denied petitioner's request for further answers.

Petitioner urges that the thrust of his motion to compel more responsive answers was in regard to DPC's analysis in arriving at the conclusions which it held with re-spect to the need for the proposed project. Availability of factual data does not, petitioner asserts, satisfy his need for such analysis in order to employ experts to refute DPC's conclusions. We agree that many of petitioner's interrogatories did seek such analysis rather than the raw data on which the conclusions were based. Many of DPC's answers were, to this extent, unresponsive.

■■ Petitioner's motion to compel answers was coupled with a motion for continuance. It clearly would have been necessary to grant the latter motion if further discovery were to be compelled. Notwithstanding any inadequacies in DPC's response to petitioner's interrogatories, we cannot conclude that the hearing officer abused his discretion in determining to move ahead toward an expeditious conclusion of an already lengthy administrative process. This conclusion is buttressed by the fact that petitioner had sought no discovery prior to the initial hearing, and the reopened hearing was for a limited purpose. We have no basis on the present record to know whether more responsive answers to the interrogatories would have significantly aided petitioner in impeaching the conclusions of DPC's witnesses.

Certainly, to some extent, the same foundation for impeachment was available to petitioner through cross-examination of the same persons who would have answered the challenged interrogatories on DPC's behalf. Such cross-examination could have been undertaken by petitioner prior to the time that his own expert witnesses testified. In totality, we cannot conclude that the fundamental fairness of the hearing process was sufficiently thwarted as a result of the unresponsive answers to interrogatories to require that the agency action be disturbed on judicial review.

V. *Evidentiary Support for the Commission's Order.*

■■ Petitioner's challenge to the evidentiary support for the commission's order is twofold: (1) that the order is not supported by substantial evidence in the record made before the agency when that

record is viewed as a whole, and (2) that the district court did not sufficiently consider the entire record in concluding that the order was supported by substantial evidence. Just as the district court, we are charged to apply the "substantial evidence" review standards of section 17A.19(8)(f) to the agency record. *Northwestern Bell Telephone Co.*, 359 N.W.2d at 495. For this reason, our consideration of the first contention advanced by petitioner removes any need to consider the second contention.

Before granting a franchise to a public utility company to construct, operate or maintain an electric transmission line, the commission was required to make a finding that the proposed line was necessary to serve a public use and represents a reasonable relationship to an overall plan of transmitting electricity in the public interest. Iowa Code § 478.4. DPC in support of its franchise request contended and offered evidence which demonstrated there had been substantial voltage drops in the feeder lines in the area where the new substation would be constructed and that, if its projections with respect to electrical demand were correct, such voltage drops would increase. While petitioner correctly notes that the record evidence of such voltage drops does not indicate they were sufficient to cause damage to equipment utilized by power consumers in the affected area, the commission's regulations, 250 Iowa Admin.Code 20.7(2), 20.7(4), 20.7(5), and 20.5(2)(g), require a utility company to be resolute in planning for and determining in advance when improvements will be required to meet the minimum standards imposed by those regulations. DPC offered evidence that the lines in the general area of the proposed substation are approaching their maximum loading capability.

In addition to its evidence on voltage drop, DPC offered evidence before the commission indicating that the additional facility will substantially improve its ability to meet a single contingency power outage in a manner that will provide minimal loss of service to its customers. In the absence of the proposed project in the event of a power loss in the area, there is no other substation available to carry the additional load. Therefore, service cannot be restored until the contingency causing the outage has been corrected. With the installation of the proposed facility, it will be possible to transfer power to the area from another source while necessary repairs are taking place. The commission, in accepting DPC's testimony in this regard, noted its approval of practices designed to handle single contingency outages in a manner causing minimal effect on utility customers.

Petitioner challenged the method used by DPC in projecting future power needs in the affected area. The load forecasting methodology used by DPC was a time series trend analysis or linear regression analysis. Simply stated, it involves a schematic representation made by a straight line drawn through dots on graph paper representing past experience. Historical system peak is plotted for a period of fifteen to twenty years by use of an "eyeball fit" to the desired year.

While the agency agreed that this method for forecasting future power demands was relatively unsophisticated, it deemed it to be significant that no other known method would project such demand with complete accuracy. The commission's order concluded that a forecast is only one factor in assessing the need for distribution system improvements. In its opinion, present inadequacies may have to be corrected based solely on current information. DPC presented evidence from which the commission could and did conclude that the proposed system changes were necessary to meet existing needs and, because of the additional future capacity which such changes provided, constituted a reasonable effort to provide for future needs.

In response to petitioner's contentions that the proposed project was not integrated into an overall plan, evidence produced by DPC indicated and the agency found that the proposed substation and transmission line had been included in DPC's construction plans since the year 1976. During the interim, the evidence shows

that, in an effort to forestall the need for the proposed substation, lines in the affected area had been upgraded by installation of larger conductors, a solution which was ineffective in meeting the perceived voltage drop or in reducing time of single contingency power outages.

Petitioner also contends that the record fails to show that the proposed project is cost-effective. The commission reviewed the estimated cost of the proposed project and found that it was not unreasonable based upon the demonstrated need for the project. Its decision recognizes the difficulties of engaging in an accurate cost benefit study on a project which affects a relatively small number of customers. As a result, the commission concluded that in some instances the distribution of power in rural areas may require that the cost of benefits to a few customers be shared by a substantially larger group of customers. We cannot determine on the present record that this conclusion is invalid or not properly applied with respect to DPC's present application for franchise.

Finally, in regard to petitioner's claim that DPC might have selected a different location for the substation, the commission noted that, while other locations might have been selected, the evidence demonstrated that the location selected was reasonable based upon location of the load center of the area to be served and the ability to secure easements over perhaps the shortest distance available along property division lines. This conclusion is supported by evidence which shows that, while alternative routes were available, it is likely that they would require longer distances, would produce an overall increase in cost and would disadvantage more property owners.

The petitioner produced the testimony of two expert witnesses who contradicted DPC's evidence as to the perceived power needs in the affected area and who opined that other solutions were available to solve the voltage drop and outage problems. While this evidence controverted the contentions of DPC's witnesses in several respects, the issue which remains is a factual dispute for the agency to resolve. We believe that the ultimate conclusion required to be made in the present proceeding was one peculiarly entrusted by law to the commerce commission's expertise. The commission's finding pursuant to section 478.4 that the proposed project was necessary to serve a public use and represented a reasonable relationship to an overall plan of transmitting electricity in the public interest quite clearly is supported by substantial evidence in the record made before that agency when the record is viewed as a whole. Accordingly, we do not disturb the commission's findings and conclusions.

We have considered all issues urged, whether or not specifically referred to or discussed herein, and agree with the district court that petitioner has demonstrated no basis for relief from the commission's order. The judgment of the district court is affirmed.

AFFIRMED.