William P. ALFREDO, Appellant,

v.

IOWA RACING AND GAMING COMMISSION, Appellee,

Greater Dubuque Riverboat Entertainment Company, L.C., Intervenor–Appellee.

No. 95–1184.

Supreme Court of Iowa.

Nov. 20, 1996.

John R. Sandre of Coppola, Sandre & McConville, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Jeffrey D. Farrell, Assistant Attorney General, for appellee.

Douglas P. Gross, James H. Gilliam, and Sean P. Moore of Brown, Winick, Graves, Gross, Baskerville, Schoenebaum & Walker, P.L.C., Des Moines, for intervenor-appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

We must determine whether the district court correctly upheld the authority of respondent Iowa Racing and Gaming Commission in its decision that petitioner William P. Alfredo was not suitable to hold an ownership interest in a riverboat gambling company or to execute agreements to repurchase or transfer interests in the company. We affirm.

I. *Background facts and proceedings.* This controversy stems from the licensing of a riverboat gambling concern. In February 1992 the Greater Dubuque Riverboat Entertainment Company, L.C. (GDREC), a corporation, and the Dubuque Racing Association (DRA) filed a joint application with the Iowa Racing and Gaming Commission (commission) for a license to operate an excursion gambling boat. The application listed Alfredo and Joseph Zwack as the holders of the 49 active units of GDREC. Other documents, however, allocated the active shares as follows: Alfredo—22 shares; Zwack—22 shares; and John Schegan—5 shares.

In March 1993 the commission considered the GDREC/DRA license application. Because the required background investigations by the Iowa Department of Criminal Investigation had not been completed for Alfredo and Schegan, the commission determined that it could not approve a license for GDREC. At Alfredo's request, in order to expedite the purchase of an excursion boat and commencement of operations, the commission agreed to issue a contingent license so long as Alfredo and Schegan had no ownership interests in GDREC until the background investigations were completed. The commission conditioned the issuance of a final license on four requirements to be satisfied by April 22, 1993:

1. No transfer of ownership interests without commission approval;

2. All contracts to be submitted for commission approval;

3. Financing to be in place and complete;

4. All background investigations to be complete.

In an April 22, 1993, amendment to its application, GDREC stated that the names of Alfredo and Schegan were to be deleted from the application and that the ownership interests of those individuals were being assigned to Zwack. On the same date, Alfredo and Schegan sent Zwack a letter confirming an agreement to transfer Alfredo's and Schegan's shares of GDREC to Zwack *subject to their right to buy back those shares.* The letter further stated that the transfer would be formalized by written contract, subject to approval by the commission if required. Schegan and Zwack executed such a contract on April 22, 1993. Neither the letter nor the contract were submitted to the commission for its approval.

A DRA committee met on April 23, 1993, with Alfredo and Zwack in attendance. According to the minutes of that meeting, the committee placed a conference call to Chuck Patton, a commission staff member, to discuss the status of the GDREC/DRA license. The minutes indicate that Patton told the DRA committee the changes reflected in the amended application were acceptable; Alfredo and Schegan could continue their involvement with GDREC as long as they could not commit company resources or hold any ownership interest. The minutes of the meeting make no reference to any options to purchase shares of GDREC.

In June 1993 the commission gave final approval for the GDREC/DRA license based on apparent compliance by the applicant with the conditions established at the March 1993 commission meeting and subject to commission approval of any future contracts involving GDREC.

Alfredo, however, continued to enter into agreements involving GDREC without seeking commission approval. On June 4, 1993, Alfredo and Zwack signed a letter stating that Alfredo had the right to purchase ten additional GDREC units, subject to compliance with applicable commission regulations. On August 4, 1993, Alfredo and Schegan executed an agreement committing GDREC to pay a commission to F.P. and Associates for its services in handling sales of GDREC stock and assets. Alfredo and Schegan signed a similar agreement in January 1994.

In February 1994 the commission sent a letter to Alfredo, Schegan, and Zwack advising them that Alfredo and Schegan must terminate their relationship with GDREC unless they made an appropriate license application. The letter also noted that the commission had just become aware of the April 22, 1993, agreement regarding options for Alfredo and Schegan to purchase GDREC stock and reiterated the requirement that such an agreement must be approved by the commission. Nevertheless, no such letters or contracts were submitted for approval.

Still more agreements were executed without approval by the commission. On April 6, 1994, Alfredo conveyed his alleged option interests on seven GDREC units to Schegan in return for Schegan's agreement to secure additional financing for GDREC. On April 28, 1994, Alfredo and Schegan conveyed their option interests, as set forth in the April 22, 1993, and June 4, 1993, letter agreements, to United Gaming, Inc. of Las Vegas, Nevada.

On May 26, 1994, Alfredo and Schegan appeared before the commission to assert ownership interests in GDREC. The com-

mission scheduled a June 21, 1994, hearing on the matter of the licensure of GDREC and the purported options held by Alfredo and Schegan. The commission further outlined the hearing agenda in a June 9, 1994, letter to Alfredo's attorney and other persons; the hearing would address the licensure of Alfredo and Schegan or their suitability to hold ownership interests in GDREC, including options, as well as approval or disapproval of the purported transfer of option agreements to Alfredo and Schegan. In a June 17, 1994, letter to Alfredo's attorney, the commission repeated its position that licensure of Alfredo and Schegan was necessary if either of them claimed ownership interests in GDREC or if United Gaming was claiming an ownership interest in GDREC through Alfredo and Schegan. The commission also emphasized that any information pertinent to the licensure of Alfredo and Schegan must be presented at the June 21, 1994, hearing.

At the hearing before the commission, Alfredo presented testimony and exhibits regarding his suitability to hold an ownership interest in GDREC. After hearing the testimony and reviewing the exhibits, the commission determined that Alfredo was not suitable to hold or transfer any claimed options or ownership interest in GDREC and denied approval of the interests claimed by Alfredo. The commission did not address any legal rights created by the April 22, 1993, and June 4, 1993, letter agreements but concluded that in the event another tribunal found Alfredo had any ownership interest in GDREC which had not been transferred to Zwack, GDREC was in violation of Iowa Code sections 99F.7(7)(c) and (d) (1993) and therefore subject to license revocation. The commission found Schegan suitable only for the limited purpose of transferring any interest he might hold to an entity licensed by the commission.

Alfredo filed a request for rehearing with the commission. The commission denied that request.

Alfredo filed a petition for judicial review in district court, contending that: 1) the commission had no authority to determine Alfredo's licensure or suitability status in the absence of a pending license application by Alfredo; 2) the proceedings conducted by the commission violated Alfredo's rights to due process under the Fifth and Fourteenth Amendments of the United States Constitution and to equal protection of the laws under the Fourteenth Amendment of the United States Constitution, see U.S. Const. amends. V, XIV; 3) the commission had approved the April 22, 1993, agreement by its subsequent licensure of GDREC and thus its decision following the hearing deprived Alfredo of his property rights; and 4) the commission improperly denied Alfredo's request for rehearing. See Iowa Code § 17A.19.

GDREC intervened in that proceeding. See Iowa R. Civ. P. 75.

Following a hearing on the petition for judicial review, the district court affirmed the commission's decision. The court ruled that the commission had the authority to adjudicate Alfredo's suitability to hold or transfer an interest in GDREC, that the commission did not approve the April 22, 1993, agreement through any actions on the part of staff member Patton, and that Alfredo had received all the due process to which he was entitled in a contested case proceeding.

Alfredo appealed. See Iowa Code § 17A.20.

**II. Standard of review.** Our review of agency action is limited to correction of errors at law. Squealer Feeds v. Pickering, 530 N.W.2d 678, 681 (Iowa 1995). We may reverse, modify, or grant other appropriate relief only if we determine the agency decision is affected by error of law, is unsupported by substantial evidence in the record, or is characterized by an abuse of discretion. Iowa Code § 17A.19(8); Burns v. Board of Nursing, 495 N.W.2d 698, 699 (Iowa 1993).

III. Commission's determination of Alfredo's suitability to hold or transfer ownership in GDREC. On appeal to us, Alfredo argues that the district court erred in affirming the commission's decision because: 1) the commission lacked the authority or jurisdiction to conduct proceedings regarding Alfredo's licensure or suitability to hold or transfer ownership interests in GDREC, lacked the authority to control the economic benefit

flowing from the issuance of a gambling license, and acted unreasonably in finding Alfredo was unsuitable; 2) the commission's conduct of the proceedings violated Alfredo's due process rights; and 3) the commission's licensure of GDREC after commission staff member Patton allegedly learned of the transfer of ownership units from Alfredo to Zwack constituted approval of the April 22, 1993, letter agreement. On appeal, GDREC, the intervenor, sides with the commission.

We turn now to these arguments.

*A. Commission's authority to conduct proceedings regarding Alfredo's licensure or suitability to hold or transfer ownership interests.* The district court concluded that the commission acted within the scope of the authority delegated by the legislature to it when the commission determined that Alfredo was not suitable to hold or transfer ownership interests in GDREC. Alfredo challenges that conclusion.

1. The legislature has empowered and obligated the commission to regulate all gambling operations governed by Iowa Code chapter 99F (1993) and to adopt rules pursuant to that mandate. *See* Iowa Code § 99F.4. Section 99F.4(1) authorizes the commission to investigate and determine the eligibility of applicants for a gambling license. Sections 99F.4(6) and (13) require the commission to investigate alleged violations of chapter 99F or the commission's rules and to take appropriate disciplinary action when it finds such violations.

The provisions of Iowa Code section 99F.7 indicate the legislature's intent that ownership interests in gambling operations must be closely monitored by the commission. Under section 99F.7(7)(d), the commission shall not grant a license if ownership interests are held by persons other than the applicant and such interests have not been disclosed. Section 99F.7(7)(e) addresses option interests; it states a license shall not be granted if:

[t]he applicant is a corporation and ten percent of the stock of the corporation is

subject to a contract or option to purchase at any time during the period for which the license is to be issued unless the contract or option was disclosed to the commission and the commission approved the sale or transfer during the period of the license.

The commission must revoke the license when it finds a violation of that provision or any other provision of section 99F.7. Iowa Code § 99F.7(15).

The regulations promulgated by the commission to implement Iowa Code chapter 99F also address the commission's duty to investigate and approve the holders of ownership interests. Under those regulations, the commission must approve a change in ownership, Iowa Admin. Code r. 491–20.14(1)(f) (1994),[1] and investigate the character and reputation of shareholders of the applicant, *id.* r. 491–20.15(3). A person required to be qualified has the affirmative duty of disclosing all information relevant to qualifications required or requested by the commission. *Id.* r. 491–21.11(2).

■ We believe that under those statutory and regulatory provisions, the commission had the authority and duty to determine Alfredo's suitability to hold an ownership interest in GDREC. Although the amended application by GDREC stated that Alfredo's interest had been assigned to Zwack, Alfredo continued to claim an ownership interest based on the option rights purportedly created by the April 22, 1993, and June 4, 1993, letter agreements. Alfredo thus was subject to investigation and approval by the commission, since, under both Iowa Code chapter 99F and the commission's regulations, licensure of GDREC depended upon disclosure of the options and approval of such transfers.

■ Alfredo argues that even if the commission has the authority to determine his suitability to hold an ownership interest in GDREC, it cannot interfere with contractually-acquired property rights by preventing Alfredo from transferring his interest to a third party. However, under chapter 99F, Alfredo could acquire an interest in and re-

---

1. Rule 491–20.14(1)(f) has since been amended. *See* Iowa Admin. Code r. 491–20.14(1)(f) (8/17/94).

ceive an economic benefit from GDREC only by complying with the provisions of that chapter and the commission's regulations. Thus, a transferable interest would exist only if the commission determined that Alfredo was suitable to hold the options he claimed. Although the commission repeatedly made it clear that GDREC's license was contingent upon divestiture by Alfredo of his interests and commission approval of all contracts and transfers, Alfredo continued to claim an ownership interest in GDREC without disclosing that interest to the commission. Alfredo's purported interest was never approved by the commission as required by statute and regulation, and thus he never obtained such an interest.[2]

If the commission could not control the economic benefits arising from a gaming license, its ability to effectively oversee gambling operations would be severely compromised. We share the concern articulated by the commission in its ruling:

> If, as Mr. Schegan and Mr. Alfredo argue, anyone can obtain an option agreement and, upon discovery of the option by the Commission, simply transfer the same and receive the full economic benefit of the ownership, all without Commission opportunity to determine the suitability of the holder of the ownership interest, the Commission's ability to prevent the intrusion of unsavory elements into the gaming industry is effectively eliminated.

Moreover, the April 22, 1993, and June 4, 1993, letter agreements upon which Alfredo bases his ownership claim were conditioned on approval by the commission if such were required. Because the issue is not before us, we do not determine whether Alfredo had any contractual rights arising from those letters. However, we note that because the letter agreements were never approved by the commission as required by chapter 99F

and commission rules, the existence of such contractual rights is debatable. We further note that a finding that Alfredo had any contractual right to the claimed options would trigger license revocation proceedings for GDREC under Iowa Code section 99F.7(15), thus rendering those options worthless.

The district court did not err in finding that the commission had the authority to determine whether Alfredo could hold or transfer his claimed ownership interests in GDREC.

2. Alfredo contends in his brief on appeal to us that the commission abused its discretion and acted in an unreasonable manner when it determined that he was unsuitable to hold or transfer ownership interests in GDREC. The commission and intervenor GDREC argue that Alfredo failed to preserve error on that issue. Although we are not convinced that error was preserved, we believe it is appropriate to resolve the issue.

In finding that Alfredo was not suitable to hold or transfer any claimed options or ownership interests, the commission set forth a number of concerns about Alfredo's qualifications and conduct. It noted that: 1) Alfredo impermissibly committed GDREC resources when he procured the services of F.P. and Associates to sell shares or assets of GDREC; 2) Alfredo failed to respond to the commission's February 1994 letter requesting that he submit the April 22, 1993 letter for approval; 3) there were concerns about the manner in which a company owned by Alfredo conducted a promotional game; 4) there were concerns about Alfredo's attempt to negotiate a release of financial obligations in connection with another promotional game; 5) Alfredo, personally and through companies he owned, had incurred substantial indebtedness; 6) there were questions

---

**2.** We note, although we do not pass on, a different theory regarding any property rights that might arise out of the licensing of a gambling operation. In a federal case involving a video gaming license, the court ruled that under state law, the plaintiffs had no property interest in obtaining such a license. *Payne v. Fontenot,* 925 F.Supp. 414, 422 (M.D.La.1995). Because the applicable Louisiana statute provided that a video gaming license was a privilege, the court concluded that no property rights existed and thus that due process rights did not attach. *Id.* Under that theory, Alfredo could claim a property interest in GDREC only if such an interest were created by Iowa Code chapter 99F. The statute is silent on that subject. However, commission rules expressly state that "[a]n application for a casino gambling license on excursion gambling boats ... is seeking the granting of a privilege." Iowa Admin. Code r. 491–20.10(4).

concerning the representations of ownership on the license application and prospectus prepared by Alfredo; and 7) Alfredo continued his involvement in GDREC's financing arrangements by contracting with Schegan to obtain additional financing even after notification by the commission that Alfredo's involvement with GDREC was completely terminated.

These actions by Alfredo constitute substantial evidence supporting the commission's determination that he was unsuitable to hold or transfer ownership units. Alfredo points out that the commission treated Schegan more leniently in that it allowed Schegan to transfer his interests to a third party. However, the commission expressly found that Schegan acted in a less egregious manner than Alfredo; unlike Alfredo, Schegan submitted his application for licensure and sought approval of a contract to which he was a party.[3] The commission did not err in its determination regarding Alfredo's suitability for ownership of an interest in GDREC.

*B. Alfredo's due process rights.* In its ruling on Alfredo's petition for judicial review, the district court found that Alfredo received the due process to which he was entitled. Alfredo assails that determination, arguing that he was not given adequate notice of the issues to be addressed at the June 21, 1994, hearing or access to the information on which the commission relied in making its decision. Neither Alfredo nor the commission challenge the district court's conclusion that the commission's action constituted a contested case proceeding under Iowa Code section 17A.2(5). Thus, we need not address that conclusion.

■ Due process requires that parties to an administrative hearing be given notice and the opportunity to defend. *Freeland v. Employment Appeal Bd.,* 492 N.W.2d 193, 195 (Iowa 1992). Under Iowa Code section 17A.12(2)(d), notice to the parties must include:

> [a] short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.

■ 1. However, "[o]rdinarily, all that need be shown to validate administrative proceedings against persons who participate in a contested case hearing is that they had a reasonable opportunity to know of the claims which affect them and to meet those claims." *Fischer v. Iowa State Commerce Comm'n,* 368 N.W.2d 88, 94 (Iowa 1985).

■ We agree with the district court that Alfredo received appropriate due process. In its letter of June 9, 1994, the commission set forth the matters to be addressed at the June 21 hearing ("licensure of Bill Alfredo or suitability of Alfredo to obtain or hold ownership interests (including options)"). In its June 17 letter, the commission reiterated that a suitability determination would be made. Furthermore, Alfredo had earlier notice of the matters to be determined. He knew in March 1993, when the commission issued a contingent license for GDREC, that his qualifications would be an issue if he continued to hold any ownership interest in GDREC. The commission's February 1994 letter indicated that Alfredo must be determined to be suitable to hold an ownership interest. In addition, Alfredo attended the commission meeting on May 26, 1994, at which the commission identified the matters to be addressed at the June 21, 1994, hearing concerning Alfredo's suitability for ownership in GDREC.

The commission conducted a sixteen-hour hearing at which Alfredo responded to questions and presented exhibits. Although he argues that he did not have access to certain

---

3. Alfredo's claims also do not support an equal protection argument; he has not shown that a *class* of persons received better treatment than did he. *See Van Baale v. City of Des Moines,* 550 N.W.2d 153, 157 (Iowa 1996) (noting that "[e]qual protection applies only if the claimant can point to another class whose members enjoy some benefit or right denied to the claimant"); *Glen Haven Homes v. Mills. County,* 507 N.W.2d 179, 183 (Iowa 1993) (asserting that equal protection does not require similar ad hoc adjudications in dissimilar situations).

information relied on by the commission, Alfredo failed to timely utilize the discovery procedures available to him. Any inability to defend himself at the hearing was thus due to his own inaction.

We conclude the district court did not err in finding that Alfredo was given adequate notice and opportunity to defend on the suitability issue.

 *C. Alleged approval of the April 22, 1993, letter agreement by the commission.* The district court upheld the commission's determination that any knowledge or approval by commission staff member Patton did not constitute commission approval of the April 22, 1993, agreement purportedly giving Alfredo an option interest in ownership in GDREC. Alfredo argues that because the commission issued a final license for GDREC after Patton became aware of a transfer of ownership from Alfredo to Zwack, the commission approved the entire letter agreement including an option for Alfredo to buy back an ownership interest.

As discussed in division III–A above, licensure of gambling operations requires an investigation by the commission into the qualifications of those individuals seeking to hold ownership interests. Such a procedure was not initiated by Alfredo after he signed the April 22, 1993 letter, nor did the commission receive from Alfredo the information needed to make that assessment. Informing a staff member of a transfer does not equate with seeking formal approval of the commission under the procedures established by statute and regulation. *Cf. City of McGregor v. Janett*, 546 N.W.2d 616, 620 (Iowa 1996) (holding that city was not liable for "misrepresentation stemming from informal statements or even assurances by its council members prior to formal action" by the city council). In addition, there is no evidence in the record that the commission gave Patton the authority to approve the agreement.

Furthermore, the minutes of the DRA meeting, which summarize the conference call to Patton, make no mention of options or even of the April 22, 1993, agreement. Therefore, there is no evidence that Patton was aware of anything beyond the information contained in the amendment to the license application that was before the commission when it granted GDREC a gambling license in June 1993.

We conclude that the commission did not approve the April 22, 1993, letter agreement, and thus we find no merit to Alfredo's assignment of error.

IV. *Disposition.* We have considered other arguments raised by the parties and find them to be without merit. We affirm the decision of the district court upholding the action taken by the commission.

**AFFIRMED.**