John W. SHERWOOD, d/b/a Sherwood Construction Company, Appellee,

v.

Ethel Mae NISSEN, Executrix of the Estate of George R. Aikman, Deceased, Appellant.

No. 54116.

Supreme Court of Iowa.

Sept. 2, 1970.

James Furey and Leighton Wederath, Carroll, for appellant.

Jones, Cambridge & Carl, Atlantic, for appellee.

UHLENHOPP, Justice.

The question in this appeal is whether plaintiff's motion for summary judgment was properly sustained in an action on an oral contract for conservation work on a farm.

The papers before the trial court and now before us show that for a number of years, George R. Aikman, who died at 85 on March 8, 1968, owned a half-section farm in Audubon County, Iowa. Mr. Aikman and his wife, who preceded him in death, had but one child who lived to adulthood, Ethel Mae. In 1936 Ethel Mae married Milo A. Nissen. For five years following, Milo worked as George Aikman's hired man on the farm.

In 1941, after George had a heart attack, he and Mrs. Aikman moved to Audubon, Iowa. Thereafter Milo rented the farm

from George for a share of the crops plus cash for pasture.

Probably in the earlier years of Milo's tenancy, George took a greater interest in the farm, but as George's age advanced and his health declined, more and more of the management as well as the operation of the farm fell on Milo. In the later years George had practically nothing to do with the farm and was unable to make decisions, and indeed in January preceding his death a conservator of his property was appointed. For some time prior to the conservatorship, Ethel Mae had authority to write checks on George's account, and George himself drew but few checks. Toward the last George was bedfast much of the time.

Milo's farm management activities, at least in the later years, included the ordinary functions such as entering the federal farm program, deciding on crops to plant, sealing or marketing grain, and making all other farming decisions.

As to repairs on the farm, Milo paid $5 per acre cash rent, which was low, and so it was understood he would pay for repairs himself and perform the labor. He made a number of repairs through the years under that arrangement.

With reference to improvements as distinguished from repairs, when fence was required to be moved because of highway changes, Milo did the work, and he and George paid for the fence. (Other fencing apparently fell in the repair category—mainly taking out existing fence and using electric fence as needed.) George's income tax returns disclose that buildings, waterworks, fences, and tile lines were constructed or improved to the tune of $36,321 from 1947 to 1965. Of this, $1,045 was for fence. How the other improvements for $35,276 were authorized, who actually made them, and what method of payment was used are not expressly shown. The conclusion that Milo contracted for them on authority from George necessarily rests on inference.

Evidently the farm contains some rough land, and about ten years prior to the events in question, Milo on his own had one Larson do some earth-moving in the area of a ditch. The farm needed more earth-moving and other conservation work, but Milo put it off. In 1967, although Ethel Mae did not approve, he decided to go forward with it. By that time George was so elderly he took practically no part in the farm management. Milo contacted plaintiff, who has large machinery, about doing the work. Plaintiff quoted $20 per hour. At first only improvements on the south part of the farm were contemplated, which plaintiff estimated would run $500 to $600. Milo directed plaintiff to proceed.

Plaintiff sent one Patterson to operate the machinery, but Milo was dissatisfied with Patterson's performance and complained. Milo thought Patterson worked too slowly and did not replace the top soil properly. When the south work was completed, however, Milo requested a smaller job be done on the north part of the farm, and that work was also performed.

Afterward plaintiff sent Milo a statement for $2,508.05. Milo believed the charge was entirely too high and said he would pay $900, while plaintiff offered to take $1,800. On February 16, 1968, plaintiff filed a mechanic's lien for $2,508.05 against the farm.

After George died on March 8, 1968, his will was admitted to probate. In it he gave Ethel Mae a life estate in the farm and named her executrix, and she was so appointed. Milo and Ethel Mae have a daughter and also a son, who was 31 at the time of these events. Milo sold his personal property on the farm to the son, but it is not clear what the consideration was. Milo and Ethel Mae moved to Audubon, and the son took over operation of the farm.

On June 29, 1968, plaintiff and Milo having been unable to resolve their differences, plaintiff brought the present suit against Ethel Mae as executrix to foreclose the mechanic's lien. In the suit plaintiff seeks to recover the reasonable value of the work, which is alleged to be $2,508.05, and

claims that Milo, in requesting plaintiff to do the work, acted as agent for George.

Ethel Mae as executrix filed answer denying plaintiff's allegations and averring that Milo did not act as George's agent with respect to the work and did not have authority to do so.

Plaintiff took discovery, and Ethel Mae produced copies of George's income tax returns revealing, among other things, the improvements made on the farm from 1947 to 1965. She also produced cancelled checks that George had given, which were few in number. The depositions of Ethel Mae and Milo were taken, disclosing the matters now related and other information.

Plaintiff then filed the instant motion for summary judgment supported by affidavit. In those documents he set forth the agreement with Milo, performance of the work, and its value. Plaintiff swore that Milo represented he was acting for George in the matter and plaintiff drew the conclusion Milo was George's agent. The motion also contained portions of the discovery depositions and referred to the documents Ethel Mae had produced.

Ethel Mae filed resistance supported by affidavit. She denied plaintiff's statements and stated no agency existed and the work was not performed as agreed, but her affidavit was largely of a conclusory nature.

The trial court held a hearing, sustained the motion, and entered judgment for plaintiff as prayed. Hence this appeal by Ethel Mae.

Frequently the question on motions for summary judgment is whether the showing in resistance to the motion is adequate. E. g., Bauer v. Stern Finance Co., 169 N.W.2d 850 (Iowa). Here, however, the question is whether the showing in support of the motion was sufficient in the first place.

■ Plaintiff has the problem which typically confronts a mechanic who deals with a tenant and then seeks to hold the landlord or the land. "It is well settled in this jurisdiction that mere knowledge of or consent to the making of improvements by a lessee does not usually subject the interest of the lessor to a mechanic's lien." Cassaday v. DeJarnette, 251 Iowa 391, 393–394, 101 N.W.2d 21, 23. Sometimes a landlord makes promises or representations directly to the mechanic or some other authorization from the landlord to the mechanic appears. Here no such special circumstances exist. Plaintiff seeks to establish authorization of the contract by the landlord through the tenant, on ordinary principles of agency. See 57 C.J.S. Mechanics' Liens § 65, pp. 557–566; 36 Am. Jur., Mechanics' Liens, §§ 94–96, pp. 73–75. In doing so, plaintiff has not shown express authority from George to Milo to contract for the conservation work, but relies on an implication of authority drawn from the surrounding circumstances. This, of course, is a permissible way to prove agency. "The existence of agency may be proved like any other fact. It is to be determined from the entire evidence in the case and from all facts and circumstances in evidence. While direct or positive evidence thereof is sufficient to prove agency, it is not necessary; agency may be sufficiently proved by circumstantial evidence, such as evidence of the apparent relation of the parties and their conduct with reference to the subject matter." 3 C.J.S. Agency § 328, p. 300.

The difficulty is that the case was not being actually tried; it was before the court on a motion under rule 237, Rules of Civil Procedure. Such a motion can be filed with or without supporting affidavits. "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment *as a matter of law.* * * * When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon

the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him." Rule 237(c) and (e). (Italics added.)

█ In connection with his motion, plaintiff had the burden of showing no genuine fact issue existed on Milo's authority and on the reasonable value of the work. Rule 237 is patterned on federal rule 56, and federal interpretations are persuasive. The United States Supreme Court stated regarding a similar situation in Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154, "As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." The advisory committee stated regarding the federal rule, "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Committee Note, Amendment to F.R.C.P. 56(e) (1963). One writer points out the opposing party takes a perilous course by insufficiently resisting a motion for summary judgment, "Yet the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required." 6 Moore, Federal Practice, 2825 (2d ed. 1966).

█ How does a court ascertain whether a genuine fact issue exists? It is said that "functionally the theory underlying the motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict." Moore, supra, 2043. Under the rule on summary judgments, the judge has before him the material on file in the case. Moore, 2438–39. If, upon the basis of such of that material as would be competent proof he would direct a verdict for movant, then it is proper to render summary judgment. Sartor v. Arkansas Natural Gas Co., 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967, 971 ("a summary disposition * * * should be on evidence * * * which would require a directed verdict for the moving party"); Wolf v. Schaben, 272 F.2d 737, 741 (8 Cir.) ("Had the case gone to trial, the trial court would have been compelled to direct a verdict for the appellee"); Moore, supra 2440 ("In determining whether he has borne his burden, the analogy between a motion for a directed verdict and a motion for summary judgment is helpful").

Whether a plaintiff is entitled to a directed verdict at the close of the evidence frequently depends on the nature of the case. Some ultimate facts lend themselves more readily to categorical proof than others. A plaintiff suing on a note is usually in a considerably different position than a plaintiff suing for negligence. Compare Person v. United States, 112 F.2d 1 (8 Cir.), with American Airlines v. Ulen, 87 U.S. App.D.C. 307, 186 F.2d 529.

█ Plaintiff had to establish a couple ultimate facts here which do not ordinarily lend themselves to unequivocal proof—implied authority of Milo as agent and reasonable value of plaintiff's services. As to an agent's authority, "A third person who has dealt with an alleged or assumed agent and in a subsequent action alleges or relies on the agency and seeks to hold or bind the principal for an act or contract of the agent has the burden of proving not only the existence and nature of the agency * * *, but also its extent or scope; * * *" 3 C.J.S. Agency § 317, p. 257. Here the papers before the trial court showed that Milo had practically sole charge of the farm and it may be assumed, without being decided, that plaintiff generated a fact question on authority, but the showing did

not rise to the dignity of establishing authority as a matter of law. A party having the burden of proof on a proposition seldom establishes the proposition as a matter of law. Mineke v. Fox, 256 Iowa 256, 126 N.W.2d 918. Milo deposed he had the work done on his own and had similar work so done on a previous occasion, and no express showing was made as to how the previous major improvements disclosed by George's tax returns came about. Thus Ethel Mae, as defendant, had some fact arguments, and the authority issue was not one for summary judgment. Somewhat similar holdings involving impropriety of summary judgments on agency issues are found in Burley v. Elgin, J. & E. Ry., 140 F.2d 488 (7 Cir.), and Eckhart v. Plastic Film Corp., 129 F.Supp. 277 (Dist.Conn.).

As to the reasonable value of the work, the papers on file disclose that the contract was not for a gross amount. Plaintiff and Milo talked about $20 per hour. The claim was unliquidated, and the burden was on plaintiff to show the number of hours required to do the job. 98 C.J.S. Work & Labor § 48, p. 796. Plaintiff did make such a showing, but this again generated a fact question at most and did not establish reasonable value as a matter of law. Sloane v. Land, 16 F.R.D. 242 (S.Dist.N.Y.). Moreover, controverting evidence again appeared in Milo's deposition testimony to the effect the work was done too slowly and not properly. The issue of reasonable value was not for disposition by summary judgment.

Rule 237 has a salutary purpose to reduce unnecessary trials. We encourage use of it, but it must be kept within proper bounds. Estate of Linderholm v. State Automobile & Casualty Underwriters, 169 N.W.2d 561 (Iowa). The questions of authority and reasonable value in this case are not phantom issues; they are real. Hence Ethel Mae is entitled to more than a hearing on the papers; she is entitled to a live trial.

Reversed.

All Justices concur.