Harold L. BANKS, Robert J. Banks, Leo W. Kinyon, Nora E. Kinyon, Jerald Ryerson, Carol Ryerson, Glenn E. Ingram, V. Bernice Ingram, Lawrence K. Jordan, G. Margaret Jordan, Isabelle G. Jordan, Oley B. Eide, Irene Eide, Duane H. Severson and Bonnie I. Severson, Appellants,

v.

CITY OF AMES, Iowa, Appellee.

No. 84–1156.

Supreme Court of Iowa.

June 19, 1985.

Robert A. Hutchison and Monte R. Hanson of Brown, Winick, Graves, Donnelly & Baskerville, Des Moines, for appellants.

John R. Klaus, City Atty., Ames, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

CARTER, Justice.

Landowners in the vicinity of a proposed sewage treatment facility appeal from district court orders in an injunction action seeking to halt the location of the project on or near plaintiffs' property, and a certiorari proceeding challenging the legality of eminent domain proceedings for purposes of acquiring land for the facility from plaintiffs Harold L. Banks and Roberta J. Banks.

Plaintiffs Harold L. Banks and Roberta J. Banks own farmland adjoining the Skunk River, a part of which has been selected by the city of Ames as the site for the construction of a new sewage treatment plant. The remaining plaintiffs own property in close proximity to that site which is outside the city limits of Ames.

On February 2, 1984, plaintiffs commenced an action to enjoin the location of the proposed project on the Banks' property on various grounds. These grounds included the following: (1) that the City was without statutory authority to exercise its powers of eminent domain beyond its corporate boundaries; (2) that it was not reasonably probable that the City will secure the necessary permits, authorizations, approvals, and funding required to complete the proposed project; and (3) that the location of the project at the proposed site was not a "reasonable or necessary" public purpose because of the existence of alternative sites.

The plaintiffs filed lengthy interrogatories seeking information concerning the details of the necessary permits, authorizations and funding for the project. Prior to answering these interrogatories, the City answered the petition denying any legal infirmity in its activities. Subsequently, and again prior to answering plaintiffs' interrogatories, it filed a motion for summary judgment alleging that it was "reasonably probable" that the permits, authorizations, approvals and funding required to complete the project could be obtained and that the proposed location of the facility was, based upon good engineering practices and economic considerations, the best available site.

The plaintiffs filed a resistance to the motion for summary judgment supported by the affidavit of the plaintiff Harold L. Banks, stating that other reasonable and more practical sites were available thereby negating any necessity that his land be

taken, and further stating that it was possible for the City to accomplish the desired result through renovation and upgrading of its existing sewage treatment facility. In another affidavit filed as part of plaintiffs' resistance to the motion for summary judgment, one Joyce E. Peterson, who was not identified, except as to name, stated that she had researched and investigated the proposed project in detail, was familiar with the permits, authorizations, approvals and funding required and believed that it was not reasonably probable that the project can be successfully completed by the City.

Plaintiffs filed a motion for adjudication of points of law under rule of civil procedure 105, seeking a determination of the City's authority to exercise its power of eminent domain beyond its corporate boundaries. The court's ruling on that motion upheld the City's authority to condemn land lying outside the city limits. Based upon that ruling, the pleadings, and the affidavits on file, the district court granted the City's motion for summary judgment in the injunction action and dismissed plaintiffs' action. At the time of the disposition of the motion for summary judgment, the City had still not answered plaintiffs' interrogatories.

Subsequently, after a condemnation commission was convened for the taking of the land of plaintiffs Harold L. Banks and Roberta J. Banks for purposes of the proposed sewage treatment facility, plaintiffs commenced a certiorari action in district court challenging the authority of the commission. Apart from an issue involving the oral appointment of a particular commissioner by the chief judge of the judicial district, which is not pursued on this appeal, the challenges lodged to the legality of the proceedings of the compensation commission involve the same basic claims and issues as were adjudged against the plaintiffs in the injunction action. After rejecting plaintiffs' challenge to the appointment of the particular compensation commissioner, the district court otherwise dismissed the certiorari action on grounds of issue and claim preclusion.

Plaintiffs' separate appeals from the judgments of the district court in the injunction action and the certiorari action have been consolidated for consideration by this court. Other factual and procedural matters not previously set forth will be considered in our discussion of the legal issues which are presented by the appeal.

I. *Propriety of Entering Summary Judgment Before the City Answered Plaintiffs' Interrogatories.*

We first consider plaintiffs' contention that it was not proper for the district court to rule on the City's motion for summary judgment prior to the serving and filing of the City's answers to plaintiffs' interrogatories. Those interrogatories were served and filed on February 9, 1984 and remained unanswered on June 19, 1984 when the court granted the City's motion for summary judgment.

■ Whatever merit this argument would have had if it had been presented to the district court, it provides no ground for relief on this appeal. Iowa Rule of Civil Procedure 237(f) permits a party resisting a motion for summary judgment to seek delay in the district court's disposition of the motion until completion of such discovery as is required to adequately resist the motion. Notwithstanding the City's failure to timely answer the interrogatories, the plaintiffs did not seek to delay the district court's disposition of the summary judgment motion as permitted by rule 237(f). As a result of this failure, they have preserved no issue with respect to the City's failure to answer the interrogatories.

II. *Authority of City to Exercise Power of Eminent Domain Beyond its Corporate Limits.*

Plaintiffs' next contention involves the district court's ruling that the City was empowered to invoke its powers of eminent domain so as to acquire property located outside its corporate boundaries. Plaintiffs urge that such authority is not conferred upon municipal corporations by the applicable statutes.

Prior to the enactment of the "City Code of Iowa," 1972 Iowa Acts chapter 1088, cities in Iowa were given express statutory authority to exercise their powers of eminent domain outside of their corporate boundaries. Iowa Code § 368.37 (1973). The latter statute was repealed as a part of the aforementioned comprehensive statutory revision of laws affecting municipal corporations. In the same act in which this repeal was accomplished, section 13 of the "City Code of Iowa" (1972 Iowa Acts ch. 1088, § 13) was enacted which provides:

A city may:

1. Acquire, hold and dispose of property outside the city in the same manner as within.

That statute is now contained in Iowa Code section 364.4(1). Section 328 of the "City Code of Iowa" (1972 Iowa Acts ch. 1088, § 328) conferred the power of eminent domain "upon all cities for public purposes which are reasonable and necessary as an incident to the powers and duties conferred upon cities." That provision is now contained in Iowa Code section 471.4(6).

■ It is plaintiffs' contention that the repeal of Iowa Code section 368.37 (1973) served to withdraw from Iowa municipalities the power which they had previously enjoyed to condemn property located outside their boundaries. We disagree. A fair interpretation of the language authorizing a city to "[a]cquire, hold and dispose of property outside the city *in the same manner as within*" (emphasis added) suggests that acquisition by eminent domain is included within the intent of that statutory language. The district court did not err in ruling that the City could exercise its powers of eminent domain outside its corporate boundaries.

III. *Whether Use of Power of Eminent Domain to Acquire Property Owned by Persons Not Entitled to Vote in City Elections Serves to Deny Equal Protection of the Law.*

■ As a corollary to its challenge to the City's right to exercise its power of eminent domain beyond its corporate boundaries, plaintiffs assert that this operates to deny them equal protection of the law as guaranteed by the state and federal constitutions. This contention is premised on the fact that the decision to acquire their property is made by municipal officials selected in an elective process in which the plaintiffs were not entitled to participate. We find no merit in this contention. The same argument could be made by nonresidents who own property within the corporate boundaries of a municipality. We believe the issue is very similar to that involved in *City of Monticello v. Adams*, 200 N.W.2d 522, 524 (Iowa 1972), where we rejected an equal protection challenge to the right of municipal corporations to annex property outside their corporate boundaries without the consent of residents of the annexed area. We similarly reject plaintiffs' equal protection argument in the present case.

IV. *Propriety of Granting Summary Judgment in the Injunction Action.*

We must begin our consideration of plaintiffs' challenge to granting summary judgment in the injunction action with a review of the legal principles involved in challenging condemnation of private property on the ground that the condemning authority is acting without sufficient public purpose or necessity. Our most comprehensive review of these principles is contained in *Mann v. City of Marshalltown*, 265 N.W.2d 307 (1978). Despite some language to the contrary in our earlier decisions, we recognized in *Mann* that the issues of necessity and public purpose may be raised by an independent action seeking to enjoin condemnation. *Id.* at 313. The source of this right was determined to lie in Iowa Code section 471.4(6) (1977) which is identical with the statute in force at the time of the present proceedings. That statute provides:

The right to take private property for public use is hereby conferred:

. . . .

6. *Cities.* Upon all cities *for public purposes which are reasonable and necessary* as an incident to the powers and duties conferred upon cities.

(Emphasis added.)

■ The *Mann* decision considered both areas of concern involved in the present

case, *i.e.*, the likelihood of securing the required permits and funding, and the suitability of the site selection. As to the first area of concern, in *Mann*, 265 N.W.2d at 315, and our more recent decision of *Hardy v. Grant Township Board of Trustees*, 357 N.W.2d 623, 627 (Iowa 1984), we have approved the following standard employed by the Wisconsin court in *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 129, 248 N.W.2d 885, 891–93 (1977):

> There will always be some possibility that a planned improvement will not be completed and put to the use intended. The test cannot be whether it is possible, whether it is conceivable that the project would fail. The test must be whether there is a reasonable assurance that the intended use will come to pass. If there is reasonable probability that the [condemning authority] will comply with all applicable standards, will meet all requirements for the issuance of necessary permits, and will not otherwise fail or be unable to prosecute its undertaking to completion, there is a right of condemnation.

We conclude that it is the proper test to be applied in the present case with respect to plaintiffs' claim that the City will be unable to obtain the required permits and funding.

With respect to the issue of site selection, our *Mann* opinion relied upon *Vittetoe v. Iowa Southern Utilities Co.*, 255 Iowa 805, 809–10, 123 N.W.2d 878, 880–81 (1963), as establishing the proposition that a challenge to public purpose and necessity may relate to site selection for a needed public project and whether the particular property sought to be condemned is necessary for the proposed use. *Id.*

■ We recognize that, in choosing among various sites which might be utilized for the construction of a public improvement, a city council, acting as a legislative body, is vested with considerable discretion. Many factors must be considered in selecting a suitable site, some fiscal, some technical, and doubtless some which may only be characterized as political.

There will often not be a clearly identifiable superior site. In choosing among alternative sites, all that is required is that the legislative determination not totally disregard the facts before the body or otherwise constitute a clearly arbitrary selection. *See* 11 E. McQuillin, *The Law of Municipal Corporations* § 32.25 n. 4 (3d rev. ed. 1983).

We must determine whether in the application of the foregoing legal principles to the motion papers the district court was justified in granting the City's motion for summary judgment. With respect to the probable success which might be expected in securing the permits, authorizations, approvals, and funding required to complete the project, the City's motion for summary judgment recited:

> Because there is a reasonable probability that the Defendant City will comply with all applicable governmental standards and permit requirements for its proposed new Water Pollution Control Facility, and will not in any other way fail or be unable to prosecute its undertaking to completion, the Defendant has a lawful right and authority under sections 364.-4(1) and 471.4(6) of the Code of Iowa to acquire the site and build the facility.

In support of the motion is attached the affidavit of Thomas W. Neumann, the assistant director of the City's water pollution control plant. The affiant outlines certain studies which indicate that the City's existing waste water treatment plant lacks sufficient capacity to meet federal standards. Based on early grants received under the Federal Water Pollution Control Act of 1972, the City was scheduled for funding of a new facility, to commence in fiscal year 1976. In 1980, there were revisions to the grant system and the priority list which delayed necessary funding until the 1990's. Still other changes in the grant priority system occurred in 1983 creating eligibility criteria which, if adopted, could authorize grant funding for the Ames

project as early as fiscal year 1985 (October 1984–September 1985).[1]

Other statements contained in the affidavit indicate construction approvals were yet to be received from the United States Army Corps of Engineers, the Iowa Department of Transportation, the Iowa State Historical Department, and the Iowa Department of Water, Air and Waste Management in order to complete the project. The affidavit concludes by stating that the City is presently required by federal law to provide adequate waste water treatment by July 1, 1988 and that

> there has been no evidence that the city of Ames cannot or will not meet the July 1, 1988 federal deadline for providing the equivalent of secondary treatment with or without grant funds. The manner in which compliance will be achieved may vary depending on whether or not grant funds are available to the city. However, the Ames City Council has voted unanimously that all facility improvements will be done at the proposed new site.

Also filed in support of the City's motion for summary judgment is the affidavit of a professional civil engineer in which the affiant states "I can discern no technical reason why the city of Ames' project for a new water pollution control facility, as set out in its facility plan, will not receive all regulatory agency approvals."

In resistance to the City's motion for summary judgment, the plaintiffs asserted that

> there is a material issue of fact as to whether there is a reasonable assurance that the intended use of the land sought to be condemned will come to pass. The existence of reasonable probability that the City will (1) comply with all applicable governmental standards; (2) will meet all requirements for the issuance of necessary permits; and (3) will not otherwise fail or be unable to complete the undertaking is a question of fact.

In support of this resistance, plaintiffs attach the affidavit of one Joyce E. Peterson, who is not identified except by name.

She indicated that she had personal knowledge and experience concerning the proposed sewage treatment project, had followed its evolution over several years, had done a significant amount of research and investigation into the permits, authorizations, approvals and funding required to complete the project, and that a reasonable probability that the City could satisfy all requirements necessary to permit completion of the project "cannot presently be shown." In addition, the Peterson affidavit specifically states

> [T]he status of grant funding from governmental sources is presently unclear, Defendant cannot show a reasonable probability that it will be able to successfully complete the construction and operation of a new Water Pollution Control Facility. Given the uncertainties of funding for this project, Defendant cannot reasonably expect to achieve its public purpose in taking the land involved in this dispute.

We recognized in *Daboll v. Hoden*, 222 N.W.2d 727, 732–33 (Iowa 1974), that certain types of issues by their very nature are not susceptible of summary adjudication. We placed considerable significance in *Daboll* and in *Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970), on the following statement of principle contained in the notes of the advisory committee on the federal summary judgment rule from which our rule is patterned. Those comments state:

> Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.

*See Daboll*, 222 N.W.2d at 735; and *Sherwood*, 179 N.W.2d at 339. In the *Sherwood* decision, we further relied on the following commentary:

> Yet the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge

1. The record does not reflect whether this funding was forthcoming during fiscal year 1985.

that burden then he is not entitled to judgment. No defense to an insufficient showing is required.

*Id.* at 339, citing 6 J. Moore Federal Practice ¶ 2825 (2d ed. 1966).

Application of these principles in *Daboll* led to the conclusion that, in negligence cases and particularly in malpractice cases, summary judgment is seldom, if ever, appropriate on issues involving the reasonableness of a person's conduct. In *Sherwood,* we drew similar conclusions with regard to the reasonable value of services. If we apply these same principles to the present case, we reach a similar conclusion with respect to whether the motion for summary judgment establishes that there is a reasonable probability that the proposed project can be successfully completed.

■ The evidentiary matter proffered in support of the City's motion for summary judgment is in the form of opinion testimony. Given the freedom which a trier of fact enjoys to disregard opinion evidence, *see Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 11 (Iowa 1977); *Miller v. International Harvester Co.,* 246 N.W.2d 298, 302 (Iowa 1976), we are unable to conclude that the motion papers and supporting affidavits negate, as a matter of law, plaintiffs' entitlement to injunctive relief. We reach this conclusion without evaluating the legal sufficiency of plaintiffs' resistance to the motion for summary judgment.

As a result of our views on the factual issue surrounding the reasonable probability of the City's completion of the project, we do not separately discuss the similar issues presented regarding the suitability of the site selected for the project. As a result of the interrelationship between funding, project completion, and site selection, we conclude that these issues are sufficiently linked to require a live trial with respect to all aspects of plaintiffs' challenge to the proposed facility on the grounds of public purpose and necessity.

The summary judgment procedures embodied in rules of civil procedure 237 and 238 have a salutary purpose. We do not

wish to discourage their use. We are convinced, however, that in the present case there are factual determinations remaining to be made in the disposition of the controversy. Nothing in our opinion is intended to suggest how the case should be decided at trial.

V. *Dismissal of Certiorari Action on Grounds of Issue Preclusion and Claim Preclusion.*

■ As a final issue, we consider plaintiffs' challenge to the district court's dismissal of its certiorari action on the ground that the controlling issues of fact and law had been adjudicated against plaintiffs in the injunction action. Plaintiffs assert that disposition of an action by summary judgment should not preclude relitigation of the same claims in a subsequent proceeding because the issues have not been tried. We disagree. In *Jordan v. Stuart Creamery Inc.,* 258 Iowa 1, 4, 137 N.W.2d 259, 261 (1965), we stated:

> Rule 217, Rules of Civil Procedure, provides: "All dismissals not governed by rule 215 or not for want of jurisdiction or improper venue, shall operate as adjudications on the merits unless they specify otherwise." Therefore, these dismissals were with prejudice on the merits.
>
> Such dismissals without an actual trial can be the basis of a plea of res judicata.

Plaintiffs' certiorari petition presents essentially the same claim as its injunction petition. Plaintiffs do not challenge the district court's determination that the City is the real party in interest in both actions. We therefore conclude that the district court in the plaintiffs' certiorari action was correct in dismissing that action on grounds of claim preclusion based upon the state of the record at that time. The court was not required to await the result of this appeal. *See* Restatement (Second) Judgments § 13 comment f (1980). Because, however, the judgment upon which this determination was based has now been reversed, we vacate the judgment in the certiorari action and remand that action to the district court for further proceedings. *See*

Restatement (Second) Judgments § 16 comment c (1980).

For the reasons stated in this opinion, we affirm the district court's ruling in the injunction action that the City may exercise its powers of eminent domain beyond its corporate boundaries. We reverse the district court's ruling in the injunction action granting the City's motion for summary judgment and remand that action to the district court. We vacate the judgment in the certiorari action and remand that action to the district court. All costs on appeal are taxed to the appellee.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN INJUNCTION ACTION; VACATED AND REMANDED IN CERTIORARI ACTION.