# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1395

_____

| | | |
|---|---|---|
| Rex Realty Co., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| City of Cedar Rapids, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| State of Iowa, | * | |
| | * | |
| Intervenor Defendant. | * | |

_____

Submitted: October 10, 2002
Filed: March 7, 2003

_____

Before HANSEN, Chief Judge, BYE, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

Rex Realty Co. ("Rex") appeals the district court's[1] order finding that the notice provisions of Iowa Procedure Under Eminent Domain, Iowa Code Chapter 6B

---

[1] The Honorable Michael J. Melloy, then United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit Court of Appeals.

(1999), satisfy constitutional due process requirements. Rex alleges that the statute is unconstitutional because it did not require the City of Cedar Rapids ("City") to provide pre-deprivation notice and an opportunity to be heard on whether a taking was for a "public purpose."[2] The district court found that the Due Process Clause of the U.S. Constitution, U.S. Const. amend. XIV, § 1, and the Due Process Clause of the Iowa Constitution, Iowa Const. art. I, § 18, do not require a city taking property under its power of eminent domain to provide the landowner with a hearing prior to the initiation of condemnation proceedings on the issue of whether the taking is for a public purpose. The district court entered judgment for the City, and Rex appeals.

Our jurisdiction is proper pursuant to 28 U.S.C. § 1291. For the following reasons, we affirm.

## I.

Rex owned real estate in Cedar Rapids, Iowa. The City wanted to extend Fourth Street Court SW, which would require the acquisition of a portion of Rex's parcel and portions of parcels belonging to other private property owners. The City's attempts to acquire the land date back at least to a December 9, 1997, meeting between the City and the affected property owners. After more than a year of negotiations ended in Rex's rejection of the City's $38,000 offer, the City Engineering Department advised Rex in a May 20, 1999, letter that it would recommend that the City Council initiate condemnation proceedings.

On June 2, 1999, the City passed a resolution ("Resolution") seeking to condemn a portion of Rex's property. The City filed an application for condemnation

---

[2] Since the events giving rise to this action, the Iowa Code has been amended, and now requires notice and a hearing on the necessity of condemning "agricultural land" for public improvement before the adoption of a resolution to condemn. Iowa Code § 6B.2A(1) (2001).

in Iowa District Court, noting that the land would be used for an additional street right-of-way. The state judge signed the application on June 10, 1999, thereby certifying that it was legally sufficient. See State v. Johann, 207 N.W.2d 21, 24 (Iowa 1973). Rex was served with a Notice of Condemnation ("Notice") on June 17, 1999. The Notice provided, inter alia, that the City desired condemnation for the purpose of an additional street right-of-way, that a compensation commission ("Commission") had been appointed to appraise the damages, and that the Commission would meet on July 21, 1999, to view the premises and appraise the damages.[3] In addition, the Notice provided the time and place of the Commission's meeting.

Prior to the Commission's meeting, Rex did not request a formal hearing to raise the issue of public purpose and did not commence any legal action in state or federal court to challenge the condemnation. The Commission held its hearing as scheduled, and Rex's counsel appeared on Rex's behalf. The Commission determined Rex's damages to be $38,000. Within a matter of days, the City paid Rex this amount, thereby vesting title to the property in the City.

Rex initially filed an appeal in state court as provided by Iowa Code §§ 6B.18 and 6B.21-.24 (1999), but voluntarily dismissed the appeal without prejudice. Rex subsequently brought suit in federal court, claiming that the City's failure to provide notice and a hearing on the issue of public purpose violated Rex's procedural due process rights. The district court held that due process did not require the City to provide Rex with notice and opportunity to be heard on the issue of public purpose before condemning Rex's property.

---

[3] Prior to the amendment, see supra note 2, Iowa Code §§ 6B.4 and 6B.14 (1999) limited the Commission's review to the assessment of damages. After the amendment, the Commission may review whether condemnation of "agricultural land" is necessary for the placement of an industry. See Iowa Code § 6B4.A (2001).

## II.

"Eminent domain is the power of a governmental entity to take private property for a public use without the owner's consent." ACCO Unlimited Corp. v. City of Johnston, 611 N.W.2d 506, 510 (Iowa 2000) (citation omitted). Iowa law grants cities the power of eminent domain, so long as the taking is for a public purpose and is reasonable and necessary. Iowa Code § 6A.4(6) (1999). With regard to the requirements for the proper exercise of this power, in this circuit "it is well settled that a sovereign vested with the power of eminent domain may exercise that power consistent with the [C]onstitution without providing prior notice, hearing, or compensation, so long as there exists an adequate mechanism for obtaining compensation." Collier v. Springdale, 733 F.2d 1311, 1314 (8th Cir. 1984) (citations omitted). An adequate mechanism existed for Rex to obtain compensation: the Commission's July 21, 1999, meeting. Rex received notice of this meeting thirty-four days prior to the meeting, well beyond the statutorily required ten days, Iowa Code § 6B.8 (1999).[4] Moreover, the City Engineering Department notified Rex in the May 20, 1999, letter that it was planning to advise the City Council to proceed with condemnation, and Rex could have appeared at the June 2, 1999, City Council meeting to challenge the City's contention that the right-of-way was a valid public purpose.

In addition, under Iowa common law, Rex had the right to collaterally attack the condemnation and seek injunctive relief at any time before the Commission's meeting. See Banks v. City of Ames, 369 N.W.2d 451, 454 (Iowa 1985) (stating that the issues of necessity and public purpose "may be raised by an independent action seeking to enjoin condemnation" (citation omitted)); Mann v. City of Marshalltown, 265 N.W.2d 307, 313-14 (Iowa 1978) (permitting an action for an injunction where

---

[4] This provision has also been amended, and the required statutory notice is now thirty days prior to a Commission's meeting. Iowa Code § 6B.8 (2001).

plaintiffs alleged that the taking of their land was not for public use). Rex was served notice of the condemnation thirty-four days before the Commission's meeting. Accordingly, under Banks and Mann, Rex had thirty-four days to challenge that the condemnation was not for a public purpose.

Finally, in addition to the option of pursuing an action for injunctive relief, Rex could have petitioned in state court for a writ of mandamus or a writ of certiorari. See Owens v. Brownlie, 610 N.W.2d 860, 865-66 (Iowa 2000) ("These remedies give the condemnee a procedural vehicle to promptly challenge the propriety of the condemnation, including the issue whether the property sought to be condemned is necessary for public use. Although our legislature primarily decides those activities that constitute public use, courts decide whether the underlying facts show an activity that constitutes a public use.").

Rex failed to exercise these procedural rights by pursuing any appropriate action in state court prior to or after the Commission's meeting. In federal court, Rex then claimed procedural due process violations. However, Iowa law denied Rex no rights afforded by the federal constitution.

## III.

For the foregoing reasons, we affirm the district court.

BYE, Circuit Judge, concurring.

A governmental entity does not have carte blanche authority to take property so long as just compensation is paid; the Constitution also requires that the taking be for a public purpose. In eminent domain and condemnation proceedings, the well-established rule has been that no pre-deprivation hearing is required as long as there are adequate post-deprivation remedies for compensation. See, e.g., Collier v. City

of Springdale, 733 F.2d 1311, 1314 (8th Cir. 1984).  But compensation is not the issue here.  Rex asks what pre-deprivation process is due a party who questions the public nature of the taking rather than the adequacy of the compensation.

Condemnation proceedings (excepting inverse condemnation) take place pursuant to established state policies and procedures.  The presumptive rule applied to due process claims requires a pre-deprivation hearing when property is taken pursuant to an established state policy or procedure.  E.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982).  Thus, the question squarely raised by Rex is which rule should give way under the circumstances involved in this case.  Should a pre-deprivation hearing be required under Logan because eminent domain proceedings take place pursuant to established procedures, or should no pre-deprivation hearing be required because the courts have not before imposed that constitutional requirement in the realm of eminent domain and condemnation proceedings?

We avoid explicitly answering that question by focusing on Rex's right to collaterally attack the condemnation of its property in its own lawsuit.  Rex clearly had notice of the City's intentions well before the condemnation actually took place, and thus had an opportunity to petition a court for injunctive relief to stop the City if the taking was indeed for an impermissible private purpose.  But the Due Process Clause requires both notice *and* an opportunity to be heard.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  Rex contends that reliance on the availability of a collateral attack, initiated by the alleged victim of unconstitutional conduct, renders nugatory the *hearing* requirements of the Due Process Clause because a collateral attack is always theoretically possible when pre-deprivation *notice* is given.

I am intrigued by that argument, and troubled by our reliance on Rex's ability to bring its own lawsuit as the grounds for affirming the district court.  Nevertheless,

I join in affirming the judgment in favor of the City, because I do not believe a pre-deprivation hearing is required under the circumstances present in this case.

I think we first need to identify the crux of Rex's claim before we can decide whether a pre-deprivation hearing is required. Rex presents this claim as a procedural due process claim. I am not convinced that Rex has a viable procedural due process claim. There is some support for the notion that, in a case such as this, the only question is whether the Takings Clause was violated, not whether the Due Process Clause was violated. In other words, because a specific constitutional provision covers Rex's constitutional claim, the due process claim collapses into the takings claim. See generally Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 464-66 (7th Cir. 1988). While such a notion has more appeal as applied to *substantive* due process claims rather than *procedural* due process claims, see id. at 465, at least one circuit has extended this analysis to procedural due process claims as well:

> Because the Just Compensation Clause of the Fifth Amendment imposes very specific obligations upon the government when it seeks to take private property, we are reluctant in the context of a factual situation that falls squarely within that clause to impose new and potentially inconsistent obligations upon the parties under the *substantive or procedural* components of the Due Process Clause. It is appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause.

Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir. 1991) (emphasis added); but see John Corp. v. City of Houston, 214 F.3d 573, 582-83 (5th Cir. 2000) (collecting and discussing the cases declining to collapse due process claims into takings claims).

If Rex's procedural due process claim is really just a takings claim in disguise, I arrive at the same conclusion reached in the majority opinion. No pre-deprivation hearing is required. Rex has adequate post-deprivation remedies available to vindicate the alleged constitutional wrong, i.e., a collateral attack under Iowa common law, or a suit under 42 U.S.C. § 1983 alleging the City violated the Takings Clause. Rex's remedy, however, would not be a § 1983 action claiming a procedural violation of the Due Process Clause based on the City's failure to hold a hearing. Rex purportedly wants a hearing before the City, prior to the actual condemnation, to air the issue whether the taking is public or private in nature. But hasn't the City already made that determination by initiating the condemnation? I suggest what Rex really seeks is a hearing before an impartial adjudicator (i.e., a judicial forum) to review the constitutionality of the City's determination under the Takings Clause. Rex cannot receive that kind of relief in a hearing before the City, either before the condemnation or after it.

Even if we analyze Rex's claim as a procedural due process claim, however, I am not convinced a pre-deprivation hearing is required. We analyze procedural due process claims in two-steps. First, we determine whether the plaintiff has a constitutionally protected interest in life, liberty, or property. Krentz v. Robertson, 228 F.3d 897, 902 (8th Cir. 2000). Second, we determine how much process is due. Id. Since Rex's interest in its own property is undisputed, the only issue here is how much process Rex was due.

The determination of how much process is due in any given situation requires a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

A balancing of the Mathews v. Eldridge factors, as applied to a party's challenge to the public nature of a taking, weighs against the necessity for a pre-deprivation hearing. In particular, I believe the risk of an erroneous deprivation is very slight. I suspect in the vast majority of eminent domain proceedings there will be no dispute about whether the governmental entity has a legitimate public purpose in condemning private property — the only issue will be how much compensation is due. Thus, the government should not have to provide a pre-deprivation hearing in every case for the sake of those few cases that involve a challenge to the public nature of the taking. Such a requirement would impose significant new fiscal and administrative burdens on governmental entities that have not before been constitutionally required in eminent domain proceedings. I do not believe that result is justified, given the slight chance a governmental entity will impermissibly take property for a private purpose.

I therefore concur in affirming the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-